## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.

HERBERT KLINE and
HDK SALES CO., INC.,

    Plaintiffs,

v.

GHASSAN A. FAKHIRDIN A/K/A
GHASSAN FAKHRULDDIN,
PETER GAVRILOV,
KENNETH GEORGE JOHNSON,
and PIERRE COHEN-AKNINE.

    Defendants,

**05   10603 RGS**

RECEIPT # _____ 43068
AMOUNT $_____
SUMMONS ISSUED YES
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED_____
BY DPTY. CLK. _____
DATE _____

MAGISTRATE JUDGE _____

### COMPLAINT AND JURY DEMAND

Plaintiffs Herbert Kline and HDK Sales Co., Inc. ("HDK Sales") bring this action for

fraud, breach of contract and violations of the Racketeer Influenced and Corrupt Organizations

Act. Specifically, the defendants have acted as a single enterprise to induce the plaintiffs, among

others, to pay large sums of money to "purchase" inventory of consumer electronics that was

never intended to be delivered.

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28

    U.S.C. § 1331, as it involves questions arising under 18 U.S.C. §§ 1962, 1343,

    1952(a) and 1961(5).

2.     This Court has jurisdiction over the subject matter of this action pursuant to 28

    U.S.C. § 1332, as the plaintiff is a citizen of Massachusetts and the defendants are

citizens of states other than Massachusetts and/or foreign states. In addition, the subject matter of this action exceeds $75,000, exclusive of interests and costs.

3.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1961, as the facts described herein constitute racketeering activity as defined by the statute.

4.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1962, as the defendants' acts described herein constitute prohibited activities as defined by the statute.

5.  The Court has personal jurisdiction over the defendants pursuant to 18 U.S.C. §§ 1965(a), (b) and (d), as the defendants have transacted their affairs, in violation of Federal law, in the state of Massachusetts.

6.  Venue is proper in this district pursuant to 18 U.S.C. § 1965(a), as the defendants have transacted their affairs, in violation of Federal law, in the state of Massachusetts.

7.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to this claim occurred in the state of Massachusetts.

PARTIES

8.  Herbert Kline is an individual residing at 25 Webster Road, Lexington, Commonwealth of Massachusetts.

9.  HDK Sales Co., Inc. is a Massachusetts corporation with a principal place of business located at 1601 Trapelo Road, Waltham, Commonwealth of Massachusetts.

10. Ghassan A Fakhirdin a/k/a Ghassan Fakhrulddin ("Ghassan") is, upon information and belief, a resident of France who regularly transacts business in the Commonwealth of Massachusetts.

11.    Peter Gavrilov is, upon information and belief, a resident of Sweden and at all relevant times was a partner in TraQwist AB.

12.    Kenneth George Johnson is, upon information and belief, a resident of Fort Worth, Texas, and all relevant times, a partner in TraQwist AB.

13.    Pierre Cohen-Aknine is a resident of Seoul, Korea, who regularly transacts business in the Commonwealth of Massachusetts.

14.    Defendants were and are active participants in the unlawful, coercive, and nefarious acts and practices described herein. The acts of the defendants present common questions of fact and law to be resolved in this case.

## FACTUAL ALLEGATIONS

### Origins of the Common Fraudulent Scheme

15.    In April 2004, Ghassan, on behalf of both himself and TraQwist AB, contacted Herbert Kline, president of HDK Sales, to discuss a business opportunity to purchase 1,000 Sony P900 cell phones and 2,000 Apple iPods for re-sale in the United States. At the time of their conversation, Ghassan had no intention of selling any products to Kline and HDK Sales.

16.    TraQwist AB ("TraQwist") was an entity incorporated under Swedish law, which, at all relevant times, had offices in Marsta, Sweden and Fort Worth, Texas. Upon information and belief, TraQwist has since ceased operation.

17.    On April 1, 2004, Ghassan and Peter Gavrilov met with Mr. Kline in Stockholm to discuss the terms of the agreement to purchase the iPods and P900 phones. At the time of this meeting Ghassan and Gavrilov had no intention of supplying any iPods or P900 phones.

18.    As a result of these discussions and inducements by Ghassan and his partner Gavrilov, Mr. Kline agreed to enter into an agreement on behalf of himself and

HDK Sales with Ghassan, Peter Gavrilov and TraQwist. At the time the agreement was made Ghassan and Gavrilov had no intention of complying with its terms. Instead, both Ghassan and Gavrilov, through the corporate entity TraQwist sought to defraud both Kline and HDK Sales.

19.    Ghassan, Gavrilov and Mr. Kline then traveled to Korea to meet with another partner in the enterprise, Pierre Cohen-Aknine, to inspect additional samples of cell phones available for purchase. Cohen-Aknine claimed that he would, through his company, Pierre Cigar LTD, facilitate the sale of these cell phones and additional iPods through another corporate entity, Hellmanns Worldwide Logistics. Cohen-Aknine knew that this statement was false when he made it. In fact, Cohen-Aknine had no intention of complying with the agreement between his enterprise and HDK Sales.

20.    Hellmanns Worldwide Logistics ("Hellmanns") is, upon information and belief, an entity incorporated and based in the United Arab Emirates.

**Terms of Initial Agreement**

21.    According to the terms of the agreement, Mr. Kline agreed to purchase the entire stock of cell phones and iPods fraudulently offered through TraQwist and Hellmanns for $866,000 with $471,500 to be paid prior to delivery.

22.    In exchange for this payment, Ghassan claimed that he would arrange for the cell phones and iPods to be delivered to a warehouse in New York by Peter Gavrilov. Ghassan knew that this statement was false when he made it. In fact, Ghassan intended to defraud HDK Sales out of the contract price.

23.    On April 2, 2004, Kline wired $431,500 to a bank account held by TraQwist, as instructed by Ghassan. The money sent to the TraQwist account was then transferred directly to Ghassan.

24.     In reliance on the contract to purchase the goods, Mr. Kline, through his company
        HDK Sales Co., Inc., entered into agreements with his customers to sell the iPods
        and cell phones once they were in his possession. Mr. Kline, through HDK Sales,
        reasonably anticipated receiving $205,000 in profit from these sales.

**Mr. Kline Travels to Paris to Receive the Goods That Were Never Delivered**

25.     On or about May 1, 2004, Mr. Kline flew to Paris to meet with Ghassan and
        finalize the shipment of iPods and cell phones. Ghassan promised that the goods
        would be released to Mr. Kline once certain "document" problems were resolved.
        Ghassan knew that these statements were false when he made them. In fact,
        Ghassan made these statements with the intention of continuing his defrauding of
        Mr. Kline.

26.     Based upon Ghassan's assurances, Mr. Kline made arrangements with the Paris
        office of Eagle Global Logistics for them to take possession of the goods and
        transport them to Boston. As part of these arrangements, Ghassan booked space
        for the goods on an Air France flight for the day after Mr. Kline was to leave
        Paris. In fact, the goods were never delivered. At the time Ghassan booked the
        space on the Air France flight he had no intention of delivering the goods. Instead
        his intention was to further his defrauding of Mr. Kline.

27.     During this same visit to Paris, Ghassan introduced Mr. Kline to his attorney, Mr.
        Norbert Guetta. Mr. Guetta informed Mr. Kline that he was fully aware of the
        dealings between Mr. Kline and the Defendants. Ghassan claimed that Mr.
        Guetta was charged with delivering the money owed to Mr. Kline to him.
        Ghassan knew that this statement was false when he made it. In fact, Ghassan
        had no intention of returning any money to Mr. Kline and was acting to defraud
        him.

**Defendant's Continued Fraud to Hide Evidence of Their Common Scheme**

28.    On or about MAY 14, 2004, Ghassan informed Mr. Kline by telephone that Peter
       Gavrilov was to meet Kenneth George Johnson, a partner in TraQwist, in Paris in
       order to transport the cell phones to New York for delivery. Ghassan knew that
       this statement was false when he made it. In fact, Ghassan made this statement to
       cover-up his defrauding of Kline and HDK Sales.

29.    On April 15, 2004, Mr. Kline wired an additional $40,000 to a bank account in
       the name of TraQwist AB at Ghassan's request in order to ensure timely delivery
       of the product. Ghassan knew that this statement was false when he made it. In
       fact, Ghassan made the request to defraud Mr. Kline of an additional $40,000.

30.    According to conversations Mr. Kline had with Peter Gavrilov, the money that
       was deposited into TraQwist's account was then transferred to Ghassan.

**Defendants Attempt to Defraud Kline and HDK Sales Regarding a Second Transaction**

31.    On April 22, 2004, Johnson flew into Boston, Massachusetts to bring to Mr. Kline
       additional samples of products supposedly available for sale. Johnson sought to
       "sell" these products on behalf of himself and Global Cellular International, LLC.
       At the time of their meeting Johnson had no intention of selling any products to
       Mr. Kline or HDK Sales. Instead Johnson sought to defraud Mr. Kline of
       additional money.

32.    Global Cellular International, LLC is an entity incorporated under the laws of
       Texas as is based in Ft. Worth, Texas.

**Defendants' Attempt to Defraud Kline and HDK Sales Regarding a Third Transaction**

33.    Soon after, Ghassan informed Mr. Kline by e-mail that the iPods he had
       purchased had already been sold to another customer in New York. Ghassan

knew that this statement was false at the time he made it. Ghassan had never intended to deliver any iPods to Mr. Kline.

34.    Ghassan promised Mr. Kline that he would receive a share of the profit from the sale of the iPods, totaling approximately $297,000. Ghassan made this statement on behalf of himself and Gulf Investment Worldwide. Ghassan knew that this statement was false when it was made. Ghassan had no intention of providing Mr. Kline a share of the profit he realized from the sale of the iPods.

35.    Ghassan Investment Worldwide is, upon information and belief, an entity incorporated and based in the United Arab Emirates.

36.    On May 1, 2004, Ghassan e-mailed Mr. Kline, assuring him that TraQwist was wiring $782,000 to Mr. Kline's bank account. Ghassan knew that this statement was false when he made it. This money never arrived and no wire was sent.

37.    On May 7, 2004, Mr. Kline received an e-mail from Pierre Cohen-Aknine stating that an additional 12,000  P900 phones would not be released to him until he paid the another $450,000. At the time of Mr. Cohen-Aknine's e-mail, Kline and HDK Sales already had a deal in place to sell the phones to a California company for a profit of $324,000. In fact, Cohen-Aknine knew that this statement was false when he made it. Cohen-Aknine had no intention of either sending the P900 phones to Mr. Kline or fulfilling his and TraQwist's requirements under the contract.

38.    Soon after Mr. Kline received an e-mail from Ghassan, assuring him that the profit due Mr. Kline and HDK Sales would be paid and the P900 phones were ready to be delivered. Ghassan knew that this statement was false when he made it. Ghassan had no intention of either paying any profits or delivering any cell

phones. Despite Mr. Cohen-Aknine and Ghassan's statements, Mr. Kline did not wire the additional $450,000 to Cohen-Aknine.

39.    On May 9, 2004, Ghassan again assured Mr. Kline that the profit money had been wired to Mr. Kline's account, but again, it did not arrive. Ghassan knew that this statement was false when he made it. Ghassan made this statement with the intent to further his defrauding of Mr. Kline and HDK Sales.

40.    On June 7, 2004, Ghassan informed Mr. Kline that the P900 phones had arrived in New York and were ready to be delivered to Mr. Kline. Ghassan knew that this statement was false when he made it. Ghassan made this statement with the intent to further his defrauding of Mr. Kline and HDK Sales.

41.    On June 10, 2004, Ghassan e-mailed Mr. Kline to tell him that Kenneth George Johnson had taken Mr. Kline's money from TraQwist. Ghassan knew that this statement was false when he made it. Ghassan made this statement with the intent to further his defrauding of Mr. Kline and HDK Sales.

42.    In reliance on Ghassan's assurances, Mr. Kline went to New York to accept delivery of the P900 phones on June 16, 2004. The phones never arrived.

43.    On June 28, 2004, Ghassan e-mailed Mr. Kline that all of the P900 phones were purchased by buyers in New York, and that the profit from that sale plus Mr. Kline's initial investment, totaling $650,000, was to be wired to his account on July 2, 2004. Ghassan knew that this statement was false when he made it. Ghassan made this statement with the intent to further his defrauding of Mr. Kline and HDK Sales.

44.    On July 8, 2004, Mr. Kline telephoned Peter Gavrilov, who stated that he was surprised that Mr. Kline had never received the product. He assured Mr. Kline that he would pay him back the money through TraQwist. Gavrilov knew that

these statements were false when he made them. Gavrilov made these statements with the intent to further the defrauding of Mr. Kline and HDK Sales.

45.    On July 9, 2004, Ghassan e-mailed Mr. Kline and again claimed that the $650,000 had been wired to Mr. Kline's account. The money was never sent. Ghassan knew that this statement was false when he made it. Ghassan made the statement with the intent to further the defrauding of Mr. Kline and HDK Sales.

46.    On July 10, 2004, Ghassan again e-mailed Mr. Kline insisting that the $650,000 was wired from Bank Leumi via Brown Brothers in New York on July 7, 2004. The money never arrived. Ghassan knew that this statement was false when he made it. Ghassan made the statement with the intent to further the defrauding of Mr. Kline and HDK Sales.

47.    On July 12, 2004, Mr. Kline telephoned and e-mailed Ghassan, who again assured Mr. Kline that the money had been transferred. Ghassan knew that this statement was false when he made it. Ghassan made the statement with the intent to further the defrauding of Mr. Kline and HDK Sales.

48.    On July 22, 2004, Ghassan again e-mailed Mr. Kline assuring him that the money was being wired. Ghassan knew that this statement was false when he made it. Ghassan made the statement with the intent to further the defrauding of Mr. Kline and HDK Sales.

49.    On August 3, 2004, Ghassan e-mailed Mr. Kline asserting that the money had been wired and was going to arrive in a New York bank in 48 hours. The money never arrived. Ghassan knew that this statement was false when he made it. Ghassan made the statement with the intent to further the defrauding of Mr. Kline and HDK Sales.

50.    On August 9, 2004, Ghassan e-mailed Mr. Kline to tell him that the money would be available on August 11, 2004, at Bank Leumi. Ghassan knew that this statement was false when he made it. Ghassan made the statement with the intent to further the defrauding of Mr. Kline and HDK Sales.

51.    On August 10, 2004, Ghassan e-mailed Mr. Kline to inform him that a large amount of inventory of iPods and P900 phones would arrive in Boston on August 11th, along with the money. Despite these repeated assurances, Mr. Kline has never received the goods he purchased or the profit money that was promised to him by Ghassan. Mr. Kline has also never received a refund of his money. Ghassan knew that this statement was false when he made it. Ghassan made the statement with the intent to further the defrauding of Mr. Kline and HDK Sales.

52.    The defendants have misrepresented and continue to misrepresent to Mr. Kline that he has purchased specific goods that have been or are going to be shipped to him and that the money he is owed from the sale of the products he originally purchased has been wired to his account.

53.    Defendants have fraudulently used ostensibly legitimate corporations Traqwist, Hellmanns, Global Cellular and Gulf Investment to perpetuate their common scheme.

**Defendants' Attempt to Defraud Kline and HDK Sales Regarding a Fourth Transaction**

54.    On or about December 2004, Mr. Johnson, on behalf of both himself and Global Cellular International LLC offered to sell Mr. Kline and HDK Sales 9500 Dell Model Inspiron 5150 notebook computers that were to be imported through Malaysia into the United States in January 2005. Mr. Johnson knew that this statement was false at the time he made it. Johnson made the statement with the

intent to fraudulently induce Mr. Kline into paying for merchandise that he had no intention of delivering.

55.    Kline, on behalf of HDK Sales, agreed to purchase the computers for $4,000,000, payable after the computers had arrived in the United States.

56.    Before the computers could arrive, on or about January 2005, US Customs agents in Malaysia stopped the shipment after discovering that the boxes supposedly containing the computers were empty. Upon information and belief these boxes were empty from the time they were sent. The computers were never delivered as promised.

**The Defrauding of Others By the Same Common Scheme**

57.    The defendants have attempted to fraudulently induce and have fraudulently induced others to pay for merchandise without any intent to deliver. For example, prior to January 1, 2003, the defendants fraudulently offered to sell cellular phones to Venturecom, a Virginia corporation, for re-sale in the United States. Similar to their dealings with Kline and HDK Sales, the defendants have accepted payment for these goods while having no intention of providing any goods in return.

## ALLEGATIONS RELATED TO RICO VIOLATIONS

58.    Plaintiffs Herbert Kline and HDK sales are "persons" within the meaning of 18 U.S.C. § 1964(c).

59.    At all relevant times, the defendants were "persons" within the meaning of 18 U.S.C. § 1961(3).

60.    Section 1962(b) of RICO provides that "it shall be unlawful for any person through a pattern of racketeering activity or collection of unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise

which is engaged in, or the activities of which affect, interstate or foreign commerce."

61.    18 U.S.C. § 1961(4) of ICO defines "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."

62.    Each and every defendant has and is currently participating in a single enterprise that has acted at all times with malice toward the plaintiffs and with the intent to engage in the conduct complained of for the benefit of the defendants and with knowledge that that conduct constituted unlawfulness.

63.    This enterprise is an ongoing organization, which engages in, and whose activities affect, interstate commerce.

64.    While the defendants participate in the enterprise and are a part of it, the defendants also have an existence separate and distinct from the enterprise.

65.    The defendants maintain an interest in, and control of, the enterprise. The defendants conduct or participate in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

66.    In addition the defendants maintain an interest in and/or control of the various corporate entities as described previously, including TraQwist, Hellmanns, Gulf Investment and Global Cellular.

67.    Defendants' control and participation in the enterprise is necessary for the successful operation of their fraudulent scheme.

68.    The numerous predicate acts of wire fraud described herein are part of separate fraudulent schemes by defendants to defraud Mr. Kline and others similarly situated, such as Venturecom, of their money and property interests under false

pretenses. Mr. Kline, as a victim of these unlawful patterns of illegal activity has and continues to suffer financial losses as a result of these activities.

69. An additional way in which the defendants implement the enterprise through aiding and abetting is through fraudulently claiming that this inventory and profits from other sales of inventory will be forthcoming.

70. In carrying out the overt acts and fraudulent scheme described above, the defendants have engaged in conduct in violation of federal laws, including *inter alia,* 16 U.S.C. § 1343, 18 U.S.C. § 1952(a), and 18 U.S.C. § 1961 *et seq.* (RICO).

71. With respect to the allegations contained herein, the defendants have engaged in a "pattern or racketeering activity," as defined in § 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a scheme for at least two such acts of racketeering activity, as described above, within the past ten years. Each such act of racketeering activity was related, had similar purposes, involved the same or similar participants and methods of commission, and had similar results impacting upon Mr. Kline and HDK Sales.

72. The multiple acts of racketeering activity committed and/or conspired to or aided and abetted by the defendants, as described above, were related to each other and amount to and pose a threat of continued racketeering activity, and therefore, constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

73. Therefore, Defendants have engaged in "racketeering activity which is defined in § 1961(1) of RICO to mean "any act which is indictable under . . . the following provisions of Title 18, United States Code § 1343 (relating to wire fraud), . . . § 1952 (relating to racketeering)."

74.    As a proximate result of the defendants' unlawful pattern of illegal conduct, the
       plaintiffs have been injured in their business, property and financial interests.

75.    Section 1961(1) of RICO provides that "racketeering activity" means, among
       others, any act which is indictable under Title 18, United States Code § 1343
       (relating to wire fraud).

76.    These claims arise under 18 U.S.C. § 1964(a) of RICO and seek to obtain
       injunctive and declaratory relief against the defendants for violations of 18 U.S.C.
       § 1962 (b) & (c), and for a conspiracy to violate 18 U.S.C. § 1962 (b) & (c) in
       violation of 18 U.S.C. § 1962 (d).

## COUNT I- VIOLATIONS OF 18 U.S.C. §§ 1962 BY CONSPIRING TO VIOLATE 18 U.S.C. § 1962(b))

77.    Plaintiffs incorporate and allege paragraphs one through seventy-six as if fully set
       forth.

78.    Each defendant conspired with each other to violate 18 U.S.C. § 1962(b) and (c),
       all in violation of 18 U.S.C. § 1962(d).  Each defendant also conspired with each
       other to participate, directly or indirectly, in the fraudulent scheme to wrongfully
       obtain and retain money owed to Mr. Kline and HDK Sales.

79.    The defendants are engaged and are continue to engage in a pattern of unlawful
       and fraudulent conduct against Mr. Kline and others by failing to make payments
       and/or deliver the products he purchased.

80.    The defendants have perpetuated their unlawful and fraudulent conduct through,
       at least in part, their interest in and/or control of various ostensibly legitimate
       corporations, including: TraQwist AB, Hellmanns Worldwide Logistics, Gulf
       Investment Worldwide and Global Cellular International, LLC in violation of 18
       U.S.C. § 1962(b).

81.    Defendants have exhibited a pattern of conduct constituting mail and wire fraud in their attempts to deprive Mr. Kline of the money he is owed and the goods he has purchased. Defendants have utilized wire services and the Internet to further their fraudulent scheme.

82.    By engaging in this unlawful scheme, conspiring to violate 18 U.S.C. § 1962 (b) & (c) and by continuing to commit multiple overt acts and RICO predicate acts of wire fraud, the defendants have proximately caused harm to Plaintiffs business and financial interests.

83.    Defendants violations of federal laws and the effects thereof are continuing and will continue unless declaratory or injunctive relief prohibiting the defendants' illegal acts which constitute a pattern of racketeering activity is ordered.

84.    The relief that the plaintiffs seek for defendants' activities that result in injury to plaintiffs' business and financial interests include declaratory and injunctive relief, costs of suit, attorneys' fees, and such other relief as this Honorable Court deems just and proper.

### COUNT II- VIOLATIONS OF 18 U.S.C. § 1343

85.    Plaintiffs incorporate and allege paragraphs one through seventy-six as if fully set forth herein.

86.    For the purpose of executing and/or attempting to execute their scheme to defraud and to obtain money by means of false or fraudulent pretenses, misrepresentations, or promises, the defendants, in violation of 18 U.S.C. § 1343, transmitted in interstate commerce wire and e-mail transmissions.

87.    With respect to their unlawful activities described above, the defendants also transmitted funds, contracts and other forms of business communications and

transactions in a continuous and uninterrupted flow across state lines and employed interstate wires and e-mail service in violation of 18 U.S.C. § 1343.

88.     The defendants intentionally and knowingly made material misrepresentations to the plaintiffs for the purpose of deceiving them and thereby obtaining financial gain. The plaintiffs justifiably relied on these misrepresentations.

89.     Plaintiffs have therefore been injured in their business and/or property interests by the defendants' overt acts and racketeering activities in an amount to be determined at trial.

### COUNT III- VIOLATIONS OF 18 U.S.C. § 1952(a)

90.     Plaintiffs incorporate and allege paragraphs one through seventy-six as if fully set forth herein.

91.     During the relevant times, and in furtherance of and for the purpose of executing the above-described scheme to defraud the plaintiffs, the defendants on numerous occasions did travel and caused others not named as defendants in this Complaint to travel in interstate commerce in order to attempt to and commit wire fraud in violation of the Travel Act, 18 U.S.C. § 1952(a).

92.     The defendants' overt acts and fraudulent racketeering activity have defrauded and continue to defraud the plaintiffs of money and property.

93.     The plaintiffs have, therefore, been injured in their business, property and financial interests by the defendants' overt acts and racketeering activity in amounts to be determined at trial.

### COUNT IV- VIOLATIONS OF 18 U.S.C. § 1961(5)

94.     Plaintiffs incorporate and allege paragraphs one through seventy-six as if fully set forth herein.

95.    The defendants have engaged in a "pattern of racketeering activity," as defined in

§ 1961(5) of RICO, by committing and/or conspiring to or aiding and abetting a

scheme for at least two such acts of racketeering activity, as described above,

within the past ten years. Each such act of racketeering activity was related, had

similar purposes, involved the same or similar participants and methods of

commission, and had similar results impacting upon the plaintiffs.

96.    The defendants have perpetuated their unlawful and fraudulent conduct through,

at least in part, their interest in and/or control of various ostensibly legitimate

corporations, including: TraQwist AB, Hellmanns Worldwide Logistics, Gulf

Investment Worldwide and Global Cellular International, LLC in violation of 18

U.S.C. § 1962(b).

97.    The multiple acts of racketeering activity committed and/or conspired to or aided

and abetted by defendants, as described above, were related to each other and

amount to and pose a threat of continued racketeering activity, and therefore,

constitute a "pattern of racketeering activity," as defined in 18 U.S.C. § 1961(5).

### COUNT V—BREACH OF CONTRACT

98.    Plaintiffs incorporate and allege paragraphs one through seventy-six as if fully set

forth herein.

99.    Defendants TraQwist and Ghassan made a valid offer to sell 1,000 Sony P900 cell

phones and 2,000 Apple iPods to Herbert Kline and HDK Sales for $860,000 plus

$6000 freight on April 1, 2004. Terms were 50% on placement of order and

balance due in 30 days.

100.    Herbert Kline and HDK Sales made a valid acceptance of this offer on the same

date through its payment of $471,500 through two payments made on April 1,

2004, and April 15, 2004.

101.  To date, TraQwist and Ghassan have yet to deliver any of the promised iPods or P900 Cell Phones.

102.  As a result, Herbert Kline and HDK Sales are entitled to the contract amount along with consequential damages as this Court may determine at the time of trial.

## COUNT VI—FRAUD

103.  Plaintiffs incorporate and allege paragraphs one through seventy-six as if fully set forth herein.

104.  Each of the defendants has made knowingly false statements with the intention of defrauding monies from the Plaintiffs.

105.  As a result of these fraudulent statements, the defendants have enriched themselves to the detriment of the plaintiffs.

106.  As such, the plaintiffs are entitled to monetary damages as this Court may determine at the time of trial.

## COUNT VII—AIDING AND ABETTING

107.  Plaintiffs incorporate and allege paragraphs one through seventy-six as if fully set forth herein.

108.  Defendants Peter Gavrilov, Kenneth George Johnson and Pierre Cohen-Aknine have each made fraudulent statements to further their fraudulent inducement of monies from Herbert Kline and HDK Sales.

109.  Defendants Peter Gavrilov, Kenneth George Johnson and Pierre Cohen-Aknine have damaged the plaintiffs to enrich themselves.

110.  As such the plaintiffs are entitled to monetary damages as this Court may determine at the time of trial.

**WHEREFORE,** in addition to the above relief, Plaintiffs Herbert Kline and HDK Sales respectfully pray for the following:

A.    An award of compensatory or actual damages in the amount in which the
plaintiffs have been injured;

B.    An award of treble damages;

C.    Punitive damages;

D.    Restitution and disgorgement;

E.    Incidental and consequential damages;

F.    Granting such other and further relief as this Court deems to be just and
appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Respectfully Submitted,

HERBERT KLINE &
HDK SALES CO., INC.,

Christopher A. Duggan
BBO No. 544150
Smith & Duggan LLP
Lincoln North
55 Old Bedford Road
Lincoln, MA 01773
(617) 228-4400

Date:   3  23  05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) ___Herbert Kline v. Ghassan A. Fakhirdin___
   ___a/k/a Ghassan Fakhrulddin___

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   (I.)      160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

   II.       195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,
             740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.         *Also complete AO 120 or AO 121
                                                                                    for patent, trademark or copyright cases

   III.      110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

   IV.       220, 422, 423, 430, 460, 480, 490, 610, 620, 630, 640, 650, 660,
             690, 810, 861-865, 870, 871, 875, 900.

   V.        150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)                                                                                     YES      (NO)

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?                                    YES      (NO)

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?   YES      (NO)

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).                                                                                                          YES      (NO)

   A.   If yes, in which division do all of the non-governmental parties reside?
        Eastern Division                   Central Division                   Western Division

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
        (Eastern Division)                 Central Division                   Western Division

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)                                                    YES      (NO)

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME ___Christopher A. Duggan___
ADDRESS ___Smith & Duggan LLP, Lincoln North, 55 Old Bedford Road, Lincoln, MA 01773___
TELEPHONE NO. ___617-228-4400___

(CategoryForm.wpd - 2/15/05)

<sup>4</sup>JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
Herbert Kline,
HDK Sales Co., Inc.

**DEFENDANTS**
Ghassan H. Fakhirdin a/k/a Ghassan Fakhrulddin,
Peter Gavrilov, Kenneth George Johnson and
Pierre Cohen-Aknine

**(b)**  County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)**  Attorney's (Firm Name, Address, and Telephone Number)
Christopher A. Duggan, Esq., Smith & Duggan LLP
Lincoln North, 55 Old Bedford Rd., Lincoln, MA 01773

Attorneys (If Known)

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

| | | | |
|---|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒☒ 3 | Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 | Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒☒ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN  (Place an "X" in One Box Only)

| | | | | | Appeal to District |
|---|---|---|---|---|---|
| ☒☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C.   1962, 1343, 1932, 1951 and 28 U.S.C.   1332 regarding common law claims
Brief description of cause:
fradulent inducement to "purchase" inventory never meant to be delivered

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE

DOCKET NUMBER

DATE
3-  -  5

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #              AMOUNT              APPLYING IFP              JUDGE              MAG. JUDGE